# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **D.O.,** *ON BEHALF OF M.O.*, | Civil Action No. 17-1581 (TJB) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **JACKSON TOWNSHIP BOARD OF EDUCATION,** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff D.O.'s ("Plaintiff") motion for attorneys' fees and costs. (Docket Entry No. 32). Defendant Jackson Township Board of Education ("Defendant") opposes Plaintiff's motion. (Docket Entry No. 41). The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiff's motion for attorneys' fees and costs. The Court considers Plaintiff's motion without argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, Plaintiff's motion is GRANTED IN PART.

## I.      Background and Procedural History

On August 27, 2015, Plaintiff filed a due process suit against Defendant alleging that the Defendant school district had denied her child a free appropriate public education in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq*. (*See* Complaint; Docket Entry No. 1). On September 1, 2016, the Office of Administrative Law ("OAL") heard the case and granted Summary Decision in favor of Plaintiff. Plaintiff was awarded a "compensatory education commensurate with the number of hours that are reflected for the programs and services in the [identified IEPs, in an educational environment that is appropriate for [M.O.'s] needs, including all necessary precautions for his allergies, for the period of March 6,

2013, through October 20, 2015, to compensate for the District's denial of FAPE" and reimbursement for the psychiatric evaluation. (9/1/2016 OAL Final Decision; Docket Entry No. 1-1 at 21-23).

Plaintiff filed this action against Defendant on March 8, 2017 on behalf of her child, M.O., seeking to enforce the administrative law judgment and to recover Plaintiff's attorneys' fees under the fee shifting provision, 20. U.S.C. §1415(i)(3), *et seq*. (*See* Complaint; Docket Entry No. 1 at 2-3). Soon after Defendant filed a Motion to Strike portions of the Complaint (Docket Entry No. 3) which was denied on July 18, 2017. (Docket Entry No. 12). Defendant thereafter filed an Answer to the Complaint on July 31, 2017, denying any culpable conduct and raising several affirmative defenses. (*See generally,* Def. Answer; Docket Entry No. 15). On August 1, 2017, this Court entered a scheduling order setting a Rule 16 Initial Conference for September 18, 2017 (Docket Entry No. 16), which was then rescheduled to September 28, 2017. (Docket Entry No. 18). During the Initial Conference, the parties expressed that they were amenable to settlement and they were directed to exchange what was necessary to facilitate settlement. (*See* Minute Entry of 9/28/2017). A telephone status conference was scheduled for October 19, 2017. (*Id.*) During the conference, the Court engaged in settlement discussions with counsel and scheduled a formal settlement conference for February 22, 2018. (Docket Entry No. 22).

During the settlement conference on February 22, 2018, a number of issues were resolved with the exception of the request for fees. Thereafter the exchange of draft settlement agreements commenced. Ultimately, the parties sought judicial intervention. On May 9, 2018, after briefing from the parties, the Court decided to reconvene settlement discussions on June 1, 2018. (*See* Minute Entry of 5/9/2018). During the settlement conference, the parties again made significant headway and the Court decided to reconvene on June 20, 2018. (*See* Minute Entry of 6/1/2018).

On June 20, 2018, the Court suggested a disbursement plan and set a Friendly Hearing for July 24, 2018. (*See* Minute Entry 6/20/2018).

On July 25, 2018, the parties notified the Court that they reached a settlement agreement. (*See* Docket Entry No. 29). The parties further consented to Magistrate Judge jurisdiction with respect to Plaintiff's anticipated fee application, as the parties could not reach an agreement with respect to what was a reasonable fee for Plaintiff's counsel. (Order and Notice of Consent to Jurisdiction by U.S. Magistrate Judge of 7/11/2018; Docket Entry No. 27). On August 16, 2018, the Court entered an Order approving a settlement in the amount of $90,000 to be deposited with the Court for the benefit of M.O.'s education. (Docket Entry No. 30). Plaintiff then filed the current Motion for Attorneys' Fees. (Docket Entry No. 32). The Court directed the parties to submit a status update regarding the issue of fees by October 8, 2018. (*See* Text Order of 9/9/2018; Docket Entry No. 33). After reviewing the parties' correspondence, the Court adjourned the return date on the motion until November 5, 2018. (*See* Text Order of 9/10/2018; Docket Entry No. 35). Defendant filed its opposition to Plaintiff's motion on November 2, 2018. (Docket Entry No. 41). Plaintiff filed her reply on November 13, 2018. (Docket Entry No. 44). The motion is therefore now fully briefed and ripe for the Court's consideration.

## I.      Legal Standard

The IDEA affords prevailing plaintiffs the right to recoup their reasonable attorneys' fees and costs. *See* 20 U.S.C. § 1415(i)(3)(B)(i). The Court must first, therefore, (1) decide whether the Plaintiff is a prevailing party, and then (2) determine the amount of reasonable fees and costs Plaintiff's counsel is owed. Defendant does not contest that Plaintiff is a prevailing party, therefore the Court will focus its analysis solely on the reasonableness of the fees requested.

Generally, courts use the "lodestar" method in evaluating a fee application and, indeed, the lodestar calculation is presumed to yield a reasonable attorney fee award. *See Machado v. Law Offices of Jeffrey*, Civil Action No. 14-7401 (MAS) (TJB), 2017 WL 2838458, *2 (D.N.J. June 30, 2017). Under the lodestar method, an attorney's reasonable hourly rate is multiplied by the number of hours the attorney reasonably spent working on a matter. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Blum v. Stenson*, 565 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citations omitted)).

The "party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." *Id*. (*citing Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). "Reasonable hourly rates are typically determined based on the market rate in the attorney's community for lawyers of similar expertise and experience." *Machado*, 2017 WL 2838458, at *2 (citing *Interfaith*, 426 F.3d at 713). *Evans v. Port Auth. of N.Y. and N.J.*, 273 F.3d 346, (3d Cir. 2001). The attorney seeking fees bears the burden of establishing that the rate requested "constitutes a reasonable market rate for the essential character and complexity of the legal services rendered." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). With respect to the hours claimed, it is incumbent upon the Court to "exclude hours that are not reasonably expended." *Rode*, 892 F.2d at 1183 (citing *Hensely v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id*. The Court, however, may not reduce a fee award *sua sponte*. Instead, "it can only do so in respect to specific objections made by the opposing party. But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." *Interfaith*, 426 F.3d at 711 (citing *Bell v. United Princeton Props., Inc.*, 884 f.2d 713, 719 (3d Cir. 1989).

Further, while the lodestar calculation is "strongly presumed to yield a reasonable fee" (*Washington v. Phila. County Ct. of C.P.*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *City of Burlington v. Dauge*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)), "[t]he court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley*, 461 U.S. at 436). As such, where a plaintiff has achieved only limited or partial success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensely*, 461 U.S. at 436. When a fee award based on the lodestar calculation would be excessive, the Court may exercise its measured discretion to reduce same. *Farrar*, 506 U.S. at 115; *see Machado*, 2017 WL 2838458, at *2. In fact, the Court "retains a great deal of discretion in deciding what a reasonable fee award is" (*Bell*, 884 F.2d at 721), and, it is understood that "in determining whether the fee request is excessive . . . the court will inevitably engage in a fair amount of 'judgment calling' based upon its experience with the case and the general experience as to how much a case requires." *Evans*, 273 F.3d at 362.

## II.  Analysis

### A.  Reasonable Hourly Rate

Here, Plaintiff seeks to recover attorneys' fees for the work done by professionals at the law firm of John Rue & Associates. The following represents John Rue & Associates' billing rates:

- John Rue: $450 per hour
- Krista Haley (Partner): $445 per hour
- Counsel (10 or more years of experience): $400 per hour
- Managing Associate (5-10 years of experience): $350 per hour

- Associate (2-5 years of experience): $300 per hour
- Junior Associate (0-2 years of experience): $250 per hour
- Law Clerk (not yet admitted): $200 per hour
- Paralegal work (by whomever performed): $150 per hour

(Decl. of John Rue, ¶ 6; Docket Entry No. 32-2).

Mr. Rue has submitted a declaration outlining his credentials and experience in support of his claimed hourly rates. While Mr. Rue states that his regular hourly rate is $450.00 per hour, he concedes that "there may be some duplication of efforts and inefficiencies in the drafting, largely related to providing junior professionals with training opportunities." (Pl.'s Br.; Docket Entry No. 32-1 at 9). Therefore, Mr. Rue proposes a blended discounted rate of $318.20 per hour, representing a 10% discount from the above listed rate. (*Id.* at 13). In support of his per hour rate, Mr. Rue notes that he graduated from Fordham Law School in 2004 and is licensed to practice law in the states of New Jersey and New York. (*Id.* ¶¶ 3 & 4). Mr. Rue states that he began his career at White and Case LLP as an associate where he was able to participate in special education pro bono litigation cases, noting that when he left White and Case in 2012, his undiscounted hourly billing rate was $690.00 per hour. (*Id.* ¶ 5). Mr. Rue began his own practice, John Rue & Associates, in 2014, which focuses on representing parents of children with disabilities and the Innisfree Foundation in disputes with public schools. (*Id.* ¶ 6).

Mr. Rue argues that his hourly rate is comparable to those charged by attorneys of similar experience in this practice area in New Jersey, and relies on certifications submitted by David Giles, Esq., Stacy Greenwald, Esq., and Catherine Merino Resiman, Esq., to support his requested hourly rate. (Docket Entry No. 32-3, 32-4, 32-5). Mr. Rue also relies on the Laffey Matrix for the period of June 1, 2018 to May 31, 2019 and the Community Legal Services ("CLS") of Philadelphia Attorney Fees schedule to assert that the rates prevailing in the community are comparable the rates of John Rue & Associates. (*See* Docket Entry No. 32-1 at 14). The Court

notes that the Laffey Matrix Plaintiff included in Plaintiff's brief was associated with the Washington-Baltimore area fees and is therefore unpersuasive. However, the CLS schedule cited tracks the rates charged by John Rue and Associates, and therefore the Court gives this considerable weight. Each of the rates propounded by John Rue and Associates for each position (partner, counsel, associate, paralegal) falls within the proposed ranges of the CLS report for years of experience with the reduced rate.

Defendant objects to Mr. Rue's request to be compensated at the discounted $318.20 per hour, arguing that Plaintiff's counsel's fees are excessive, redundant or otherwise unnecessary. (*See generally* Def. Opp. Br.; Docket Entry No. 41). First, Defendant argues that Mr. Rue's previous billing rate during his employment at White & Case LLP is irrelevant as the commercial litigation matters he worked on were far more complex than education matters such as the one at present. (*Id*. at 12). Defendant also argues that Defendant's counsel has charged considerably less money for these matters than Plaintiff's counsel.[1] On this point, the Court is not swayed by the price differential between counsel's fees as each represents a client with very different demands, and one's fee scheme has no bearing on the others. Lastly, Defendant contests the legitimacy of the affidavits attached to Plaintiff's application, which is discussed below.

Plaintiff's counsel submits the affidavits of Staci Greenwald, David R. Giles and Catherine Merino Reisman to support his claim that the requested fees are reasonable. (*See* Certifications of David R. Giles, Docket Entry No. 32-3, Staci J. Greenwald, Docket Entry No. 32-4, Catherine Merino Reisman, Docket Entry No. 32-5). In these affidavits, each attorney submits that based on their education, training and experience, they believe that the rates submitted by John Rue and

---

[1] Defendant argues that for the Due Process litigation, Defendant's counsel charged the District $57,026.08 and for the federal litigation, Cooper Levenson billed $49,582.87. On the other hand, Plaintiff's counsel billed approximately $163,449.00 in the due process matter and $433,925.50 in the post-Due Process settlement discussions.

Associates are reasonable. Ms. Greenwald is a partner at Sussan, Greenwald & Wesler and has practiced special education law since 1992. She submits that the fees charged by John Rue & Associates "comport with a customary fee charged by other attorneys who specialize in this area and who practice in the community in which this matter arose, and is reasonable in light of the various levels of expertise and years in practice." (*See* Certification of Staci J. Greenwald Docket Entry No. 32-4 at 3). She further states that the fee structure submitted by Mr. Rue "parallels that of the fees charged by my firm for billers with similar qualifications." (*Id.*). Ms. Greenwald notes that her typical hourly rate is $430.00 per hour. (*Id.*).

Ms. Reisman has been practicing special education law in New Jersey since 1999. (*See* Docket Entry No. 32-5 at 2). She states that in her representation of families, she has "attended Individualized Education Program meetings, negotiated settlements with school districts, written and filed complaints for Due Process Hearings with New Jersey's Office of Administrative Law…and participated in federal court litigation and appeals." (*Id.*) She also states that she has negotiated attorney's fees in scores of special education cases and has litigated many fee petitions in federal court under the federal fee shifting statutes and has thus "extensively researched the customary billing rate for attorneys who concentrate their practice in special education law in New Jersey." (*Id.* at 5.). Importantly, Ms. Reisman includes her current billing scheme at her law firm Reisman Carolla Gran LLP, stating that she charges $475 per hour and that the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit has approved this hourly rate. See *Sch. Dist. of Phila. V. Kirsch*, 2017 U.S. Dist. LEXIS 3907, at *17 (E.D. Pa. Jan 11, 2017), *aff'd in relevant part*, 722 F. App'x 215, 239 *3d Cir. 2018).

Mr. Giles is an attorney with nearly thirty years of experience in the area of education and civil rights law, the majority of which he has practiced in New Jersey. (*See* Certification of David R. Giles, Docket Entry No. 32-3 at 2). He states that he is familiar with the rates charged by members of the New Jersey legal community, including many who practice civil rights law. Mr. Giles submitted the following regarding John Rue: "based on my familiarity with prevailing rates charges by attorneys in the New Jersey legal community, the nature and complexity of education law cases, John Rue's level of legal experience, and the inherent risk in taking cases on a contingency basis, I believe Mr. Rue's rate of $450 per hour is reasonable and within the range of prevailing rates charged by attorneys with comparable skill, education and experience in New Jersey." (*Id.* at 3). Mr. Giles submitted that he had reviewed the resumes and qualifications of each of the attorneys, associates, law clerks and paralegals and determined that their stated rates were reasonable as well. (*Id.* at 3-5). Having spent a large portion of his career handling pro bono and contingency cases, Mr. Giles states that he has "had to keep abreast of the prevailing market rates for legal services in the communities in which [he has] practiced by paying attention to various published surveys of rates charges, talking to colleagues and reviewing related court decisions." (*Id.* at 3). Mr. Giles does not, however, including any specific evidence from the referenced fee surveys of rates charged by attorneys with similar experience in New Jersey or analysis of similar fee applications in this District. Therefore, the Court gives less weight to Mr. Giles affidavit than Ms. Greenwald's and Ms. Reisman's, which specifically reference their own hourly rates for the Court's comparison.

Defendant argues that the Court should not give weight to the affidavits of Staci Greenwald and David R. Giles in support of Plaintiff's application because they have considerably more experience in education matters than Mr. Rue. Further, Defendant argues that the affidavits are

insufficient to determine the "market rate" because the affiants do not state the aggregate number of hours handling similar matters. Defendant does not make an argument in regard to Ms. Reisman's affidavit.

Despite Defendant's objections to the contrary, the Court finds that the hourly rates associated with John Rue & Associates are reasonable. In making this finding, the Court relies upon the CLS fee schedule referenced by Plaintiff and the certifications attached to her application. In determining a reasonable hourly rate for attorneys' fees, the Third Circuit has cited with approval the CLS fee schedule. *See Boles v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 102920, *15, 2015 WL 4653233, *citing Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). Defendant does not provide an alternative to the CLS fee schedule or propose alternative fees and therefore the Court will rely on the CLS as a benchmark for the reasonableness. Each level of employee at John Rue and Associates charges a level within the CLS range with the exception of Junior Associates with 0-2 years of experience, who are paid $250 - $50 more per hour than the CLS guidelines. However, Courts in this District have approved rates outside of the CLS fee schedule for associate attorneys such as is present here. *See, e.g., Robinson v. Jordan*, No. 08-5863, 2012 U.S. Dist. LEXIS 87427, 2012 WL 2397446, at *2 (D.N.J. June 25, 2012) (approving rate of $275 for associate attorney). In any event, the discounted rate squarely fits within the CLS range. Therefore, the Court finds that this fee scheme is reasonable.

Additionally, the Court relies on the certifications attached to Plaintiff's application, particularly that of Ms. Greenwald and Ms. Reisman, who each charge rates higher than the $318.20 discounted rate Mr. Rue proposes here. Each of the certifications attached to Plaintiff's motion also approve of the fees charged by the other attorneys and paralegals at John Rue and

10

Associates.[2]  As set forth in his application, Mr. Rue is an experienced litigator having practiced law in New Jersey for 15 years and has focused his practice on education law exclusively for the last 5 years.  The Court also views John Rue and Associates rates in light of the successful outcome of Plaintiff's case in the OAL matter and at settlement.  Everything considered, the Court finds that Plaintiff has established the reasonableness of Mr. Rue and Associates requested hourly rates.

### B. Hours of Work Reasonably Performed

Defendant challenges the reasonableness of the number of hours and associated fess requested by Plaintiff in what it characterizes as participation in "two straightforward matters: (1) a due Process litigation resolved by Motions for Summary Decision, and (2) a federal litigation resolved be amicable settlement agreement." (Def.'s Opp. Br.; Docket Entry No. 41 at 15).  Specifically, Defendant asks the Court to be wary of three specific categories of Plaintiff's motion that are excessive: (1) substantial amounts of attorney time devoted to finite tasks, including preparation of motions and other pleadings, and attending settlement conferences; (2) excessive billing toward settlement discussions and the preparation of settlement documents; and (3) multiple interoffice discussions and conferences. (*Id.* at 19).  Defendant provides a line-by-line challenge to Plaintiff's counsel's billing submissions. (*See* Exhibit A to the Certification of William S. Donio, Esq.; Docket Entry No. 41-1).

The Court notes that considerable attempts at dispute resolution were conducted in the approximately three years this case was pending before settlement in this Court, rendering it a far cry from "straightforward" as Defendant suggests.  First, the parties agreed to engage in voluntary mediation with the New Jersey Department of Education.  Plaintiff submits that

---

[2] Plaintiff, and the certifications attached to her motion, approve of the fee scheme for the following employees of John Rue and Associates: John Rue, Krista Haley, Donald Soutar, Jeffrey Wasserman, Denise Rubin Glatter, Wayne Pollock, Michelle Cummins, Eric Storjohann, Jamie Latsko, Anna Edwards, Sara Tarraboccia, Elizabeth Schust, Clinton Glass and John Rinaldi.

counsel offered several settlement proposals during mediation, all of which were rejected by Defendant's counsel, who Plaintiff argues did not offer any of its own proposals to end this dispute amicably and in a timely manner. (Pl.'s Brief; Docket Entry No. 31-1 at 17). Defendant does not suggest that it offered any counter proposals to Plaintiff, and the Court has no evidence that it did so. Plaintiff submits that it accrued less than $20,000 in attorney's fees through mediation. (*Id.*).

After the unsuccessful mediation, Plaintiff filed a due process matter in the OAL. Plaintiff argues that much of the expense that arose during this process was due to obstructionist tactics by Defendant including flouting discovery requirements, failing to meet deadlines and filing frivolous motions. (*Id.* at 17-19). Plaintiff argues that $52,555.00 in fees was accrued from the time Plaintiff amended her Complaint through the close of discovery. The parties filed cross-motions for summary disposition, during which time Plaintiff incurred an additional $38,672.00. Plaintiff argues that the parties continued to prepare for trial while the motions were pending before the OAL, and Defendant "stonewalled Plaintiff's repeated efforts to engage in meaningful settlement negotiations." (*Id.* at 18).

Defendant argues that Plaintiff unreasonably protracted this litigation but fails to demonstrate, with evidence, specifically in what way. Defendant alleges that Plaintiff "had no intention of settling this litigation quickly and desired to generate increasing legal fees for its subsequent fee application to the Court" but the only evidence it provides comes in a footnote in its brief, explaining that "the parties spent significant amounts of time during the two (2) settlement conferences addressing Plaintiff's counsel's changes to the District's documentation submission requirements, which are statutorily mandated." (Def.'s Brief; Docket Entry No. 41 at 24, n. 5).

The conduct of Plaintiff, does not, as Defendant suggests, support a finding that Plaintiff intentionally endeavored to prolong the litigation.

The crux of the delay in this case came after the September 1, 2016 OAL Order. Defendant did not appeal the merits of that decision, giving up any ground it may have had to dispute the findings. Moreover, Defendant failed to comply with the Order's mandate, forcing Plaintiff to take action to enforce this matter post-judgment, culminating in the filing a Complaint and incurring $101,415.00 in attorney's fees. Additionally, Defendant's response fails to address Plaintiff's allegations or explain any of the decisions that it made in the six months after the September 1, 2016 Decision in terms of creating a plan for Plaintiff's accommodation that would comply with the OAL Order. The only evidence the Court has that Defendant attempted to comply at all with the Order is an informal e-mail exchange in which counsel for Defendant suggests providing Plaintiff with ten hours per week of academic tutoring until thirty-one months of compensatory education had been provided. (*See* Rue Cert., Exhibit C, 10/6/2016 e-mail to Pruchnik; Docket Entry No. 32-2). When Plaintiff pushed back, Defendant refused to provide any written proposal for compliance with the OAL Order. Defendant, in its papers, does not dispute any of the allegations made by Plaintiff in this regard.

Seeing no other recourse, the Plaintiff filed the Complaint. In response, Defendant filed a 12(f) motion seeking to strike certain allegations as improper which was denied on July 18, 2017. (*See* Docket Entry No. 12). Defendant thereafter filed an Answer on July 31, 2017. (Docket Entry No. 15). Finally, three years after this litigation began, and after nine months of settlement negotiations, the parties agreed to the terms of a settlement. The agreement was approved at a Friendly Hearing. In further support of its contention that it was the Defendant and not the Plaintiff whose conduct prolonged this litigation, the Plaintiff maintains that Defendant acted unreasonably

and prolonged the proceedings by arguing to keep the merits claims alive when the Plaintiff agreed to dismiss them. (*See* Pl.'s Br.; Docket Entry No, 32-1 at 22-24).

Courts have held that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011). Nonetheless, the Court has fully reviewed Defendant's line-by-line challenge to Plaintiff's records and notes that no single entry struck the Court as unreasonable. In determining the reasonableness of the work performed by counsel, noting that It presided over a number of the proceedings, including the settlement conferences, the Court finds that the Plaintiff's counsel, while zealous, acted reasonably under the circumstances. Further, the Court finds that the specificity with which Defendant demands Plaintiff include in its billing records is not warranted. For instance, Defendant challenges dozens of the billing entries on the basis that "the billing entry is not sufficiently descriptive to justify expense." (*See* Exhibit A to the Certification of William S. Donio; Docket Entry No. 41-1, *passim*). For example, Defendant disputes John Rue's February 6, 2017 entry submitted as follows: "Attention to federal complaint and related strategy; email with client re same; legal research" and billed for 2.0 hours. (*Id.* at 37). Plaintiff need not submit a more detailed contemporaneous record than that provided by counsel here. Plaintiff's counsel's *pro forma* invoice demonstrates, chronologically, how each attorney that worked on this case spent their time describing each activity performed in sufficient detail. *See Boles v. Walmart Store*, Civil Action 12-1762 2015 WL 4653233, at *8 (D. N.J. Aug 6, 2015), *aff'd* 650 Fed. Appx. 125 (3d Cir. 2016). The Court finds that Plaintiff's detailed sworn statement of hours, based on contemporaneous records, are sufficiently reliable to provide a basis for calculating reasonable attorney's fees and will not require more exacting scrutiny. *See Baughman v. United States Liab.*

*Ins. Co.*, 723 F. Supp. 2d 741, 749, 2010 U.S. Dist. LEXIS 69641, *18. The Court therefore finds

that Defendant's allegation that Plaintiff's billing entries are vague is without merit.

Lastly, Defendant's argue that Plaintiff includes certain costs—primarily meals—should

not be included in recoverable costs under 20 U.S. C. § 1415(i)(3)(B). Although courts in this

District have found that attorneys' fees may be recovered for such items as meals, lodging,

messenger fees, long distance telephone calls, and other out of pocket expenses that are of the

type that an attorney would normally bill a fee-paying client *(See, e.g., Titan Stone, Tile &*

*Masonry, Inc. v. Hunt Constr. Group, Inc*., 2008 U.S. Dist. LEXIS 18090, *1, 2008 WL 687263)

given that Plaintiff has agreed to withdraw its submission for this expense, along with three other

entries, totaling a reduction of $2,808.61 (Pl.'s Reply Br., Docket Entry No. 44 at 19), this issue

is moot.

Based on the foregoing, the Court finds that Plaintiff's suggested 10% across the board

reduction rate is reasonable. The Court also notes that it will not engage in both a general

reduction and an hour-by-hour analysis of the fees propounded by Plaintiff. *See Am. Bd. of*

*Internal Med. v. Von Muller*, 540 Fed. Appx. 103, 104, 2013 U.S. App. LEXIS 18941, *1, 2013

WL 4852293 (finding that a Court "may conduct an hour-by-hour analysis *or* it may reduce the

requested hours with an across-the-board cut")(emphasis added); *See also Gates v. Deukmejian*,

987 F.2d 1392, 1399 (9th Cir. 1992) ("Despite the "concise but clear" requirement, in cases

where a voluminous fee application is filed[,] in exercising its billing judgment the district court

is not required to set forth an hour-by-hour analysis of the fee request. Rather, . . . when faced

with a massive fee application the district court has the authority to make across-the-board

percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical

means of trimming the fat from a fee application." (internal citations and quotation marks

omitted)).  Plaintiff submitted a 132-page certification enclosing their invoices for this matter

and Defendant submitted a 52-page response challenging them.  Accordingly, the Court finds

that the 10% reduction adequately addresses any of Defendant's concerns of incidental excesses

and redundancies in Plaintiff's *pro forma* invoice.

### III.     Conclusion

In sum, Plaintiff shall be awarded attorneys' fees in the amount of $388,837.44.  This

number is calculated based on the discounted rate of $390,532.95 (1,227.3 hours of work at the

blended rate of $318.20 per hour) plus expenses in the amount of $1,113.10, less $2,808.61 in

entries Plaintiff has offered to withdraw from its application.[3]  Defendant is directed to pay same

no later than **May 15, 2019**.

For the reasons stated above, Plaintiff's motion for attorneys' fees and costs is

GRANTED IN PART.  An appropriate Order follows.


Dated:  April 30, 2019.


s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] The Court notes that Plaintiff agreed to withdraw the following entries in lieu of Defendant's rejecting the discounted rate: Docket Entry No. 42-1, Entry Nos. 17, 48, 59 and 60. (*See* Pl. Reply Br.; Docket Entry No. 44 at 18-19).  The Court finds that this compromise, in addition to the reduced rate, equitably compensates Plaintiff's counsel while addressing any incidental excesses and redundancies.